# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS THOMPSON, an individual<br><br>Plaintiff,<br><br>vs.<br><br>NAVIGATORS INSURANCE COMPANY, and DOES 1 through 20 inclusive<br><br>Defendants. | Case No.: 11-cv-381 JM-RBB<br><br>**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT**<br><br>Docket No. 28 |

In February of 2011, Navigators Insurance Company ("Navigators") filed a complaint seeking rescission of its insurance contract with Thompson Builders, Inc. ("TBI"). Both parties now seek summary judgment. For the reasons stated below, the motions are DENIED.

**I. BACKGROUND**

TBI submitted an application for commercial general liability insurance in December 2009. Shortly thereafter, TBI began repair work on a commercial structure in National City, California that had previously been damaged by fire. Colin Butler, an employee of Vanderbuilt Construction ("Vanderbuilt"), was injured when he fell through a hole in the roof of the building; Thomas Thompson was also performing work on the roof on the day of the accident. Butler is

seeking damages from both TBI and Thomas Thompson in California state court ("Butler litigation").

Navigators rescinded TBI's insurance coverage on February 18, 2011, claiming that TBI had made material misrepresentations in its application for the policy. It refused to defend TBI or Thompson in the Butler litigation. Navigators brought this action seeking rescission of its insurance contract with TBI and/or a declaration that Butler's injury is not covered under the insurance policy.

## II. LEGAL STANDARD AND DISCUSSION

Navigators' arguments in favor of summary judgment fall into two general categories. First, it asserts that rescission of the contract was permissible because of material misrepresentations made by TBI in its application for insurance. Second, it argues that even if the contract had not been rescinded, the accident in question did not fall within the policy's scope of coverage.

### A. Standards of Insurance Contract Interpretation

Interpretation of an insurance contract is a matter of law, and thus can be decided on summary judgment when facts are undisputed. Barnett v. State Farm General Ins. Co., 200 Cal.App.4th 536, 543 (2011). Thus, courts can decide questions of insurance coverage based on the terms of the policy unless the terms are capable of two or more reasonable constructions. Powerine Oil Co., Inc. v. Superior Court, 37 Cal.4th 377, 390 (2005). Disagreement over the meaning of a term does not necessarily make it ambiguous; instead, courts should look to the language and context of the entire policy. Id. at 390-91. A party's expectation of coverage cannot create an ambiguity, but does become relevant if the court finds that an ambiguity exists. California Traditions, Inc. v. Claremont Liability Ins. Co., 197 Cal.App.4th 410, 420-421 (2011). If a term is ambiguous, it is usually construed against the insurer. Powerine, 37 Cal. 4th at 391.

**B. Rescission**

In determining whether an insured's misrepresentations entitle the insurer to rescind the policy in question, the court must decide whether the misrepresentations were material. Imperial Cas. & Indem. Co. v. Sogomonian, 198 Cal.App.3d 169, 179 (1988). A misrepresentation is material if "the insurer was misled into accepting the risk or fixing the premium of insurance." Holz Rubber Co., Inc. v. American Star Ins. Co., 14 Cal.3d 45, 61 (1975). While an insurer is entitled to know the facts relative to the object of the insurance,

> [t]hat is not to say . . . that a mere incorrect answer on an insurance application will give rise to a defense of fraud, where the true facts, if known, would not have made the contract less desirable to the insurer. Moreover, the trier of fact is not required to believe the 'post mortem' testimony of an insurer's agents that insurance would have been refused had the true facts been disclosed.

Sogomonian, 198 Cal. App. 3d at 180-181 (citations omitted).

1. Whether TBI Performed Demolition Work

First, Navigators argues that rescission is appropriate because TBI represented that it had not performed demolition work in the last ten years and did not plan to do so in the future. Ins. App. at 6. According to Navigators, TBI began to work on the project prior to the date of application and continued afterward. It points to deposition testimony in which Thompson admits that his invoice contained the words "demo roof," purportedly indicating that he performed demolition work. Lindell Decl. Ex. C p. 238.

TBI's arguments are largely based on the supposedly ambiguous definition of the term "demolition." First, it notes that the question in the application asked if TBI engaged in "[d]emolition of a residence or commercial building." TBI states that industry usage commonly refers to "demo" or "demolition" as removing any existing material on a job, and it was clear to Navigators that TBI, a remodeler, would often need to remove some existing parts of structures in order to complete its jobs. Under TBI's view, the phrasing of the question leads to the conclusion that Navigators was asking whether TBI would ever take down entire structures.

Navigators is correct that "the mere fact that a term is undefined does not require a finding of ambiguity." Nav. Reply at 3.[1] Regardless of that fact, TBI has sufficiently demonstrated that the term "demolition" is ambiguous. Even if Navigators is correct that under TBI's definition, the term "structural" would be superfluous in the insurance application, that does not establish that the question is free from ambiguity, given the multitude of definitions that could attach to "structural demolition." Navigators has not provided a satisfactory definition of the term "demolition." Because of the ambiguity, summary judgment in favor of Navigators on this issue is inappropriate.

2. Whether TBI Performed Roofing Work

Navigators also contends that rescission was justified because TBI stated it would not perform roofing work. The application asked whether there had been or would be "[r]oofing performed by applicant (not subcontracted)," and TBI answered "No." Ins. App. at 6. Again, TBI disputes Navigators' definition of the term at issue. TBI argues that it simply performed carpentry work to create the frame of the roof while a separate roofing company was hired to perform the actual "roofing" work. TBI contends that the trade definition of the term only includes what essentially amounts to the "waterproofing system" that keeps the rest of the structure (including the wooden frame) dry.

Here also, there is a genuine question as to whether TBI's work on the project should be understood as "roofing" as referred to in the application. Navigators does not address this issue head-on and does not attempt to set forth a clear definition of what type of work should be

---

[1] The main case relied upon by Navigators in support of its argument in this section is inapposite. In the case, Century Surety Co. v. 350 W.A., LLC, 2011 U.S. Dist. LEXIS 111366 at *12-*17 (S.D. Cal. 2011), the insurance company asked both the demolition question and whether "any structural alterations [were] contemplated." Evidence showed that the applicant answered "no," but at the time was considering converting an office building into a residential building, which would have required deconstructing the building to its core. Thus, clearly structural alterations were contemplated, and the definition of "demolition" was not discussed. The supposed ambiguity concerned whether the applicant's tentative plans met the definition of the term "contemplated."

included in the term "roofing." Instead, its reply concerns the definition of "Carpentry Residential" on the application, which states that the job definition:

> Includes structural and non-structural remodeling and repair. All roofing work must be subcontracted. Exterior framing as a subcontractor not allowed. No exterior work on buildings exceeding 3 stories. Examples: Kitchen & bathroom remodeling & decking. Work also may include adding square footage such as a second story or room additions.

Navigators argues that under the contract interpretation doctrine of ejusdem generis,[2] "terms are interpreted by reference to the surrounding language." Nav. Reply at 5. Consequently, it argues that because the phrase "[a]ll roofing work must be subcontracted" exists, this indicates that any structural remodeling or repair done to a roof necessarily falls within the roofing exclusion. This argument fails because it ignores the possibility that there are various types of work that could be done on a roof that would fall into the scope of "structural and non-structural remodeling and repair." TBI's definition of "roofing"—work that waterproofs the building—could otherwise fall within "structural and non-structural remodeling and repair," and be excluded by the clause. Navigators apparently takes for granted that waterproofing (or other work that would fall under TBI's definition of roofing) could not be included in the term "remodeling and repair," but it has not attempted to establish that proposition.

Because Navigators has failed to demonstrate that the term "roofing" clearly encompasses the work performed by TBI, it cannot achieve summary judgment on this issue.

3. Materiality of TBI's Misrepresentation as to Work on Commercial Building

It is undisputed that while TBI stated it performed 100% residential work, the project in question was on a commercial building. Because there is no dispute as to the contract's interpretation on this issue, the court must decide whether the misrepresentation was material.

---

[2] Black's Law Dictionary defines the term as "[a] canon of construction holding that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." 9th ed. (2009).

Navigators argues that the misrepresentation was material because it would have charged a higher premium for TBI's policy. However, even if Navigators' evidentiary objections were all sustained, there is conflicting evidence on whether Navigators would have charged a higher premium if TBI had disclosed its commercial work. Thus, there exists a genuine issue as to whether the insurance policy would have been costlier to TBI had it disclosed its occasional work on commercial property. See Sogomonian, 198 Cal. App. 3d at 180-181.

4. Whether TBI Repaired Fire Damage

Finally, Navigators' rescission decision was apparently based in part on TBI's misrepresentation concerning whether it had or planned to "perform[] any repair or remediation of fire damage." Ins. App. at 6. TBI first claimed that while there was some fire damage to the roof of the building in question, the work was not a "repair or remediation" of that damage.[3] At the hearing, TBI essentially abandoned this argument, instead relying on its contention that the representation was not material.

TBI has submitted underwriting guidelines purporting to show that under the policy, fire repair work can be covered if the insured is working as a subcontractor. Steinberg Decl. Ex. 25. This contradicts Navigators' three declarations claiming that coverage for fire repair work was completely unavailable under the policy. See, e.g., Vaughn Decl. ¶ 7 (explaining that if TBI had disclosed its fire repair work, "BTIS would have rejected TBI's Application because fire remediation and repair work is outside the scope of BTIS's underwriting guidelines for the Victory Program"). Even ignoring the underwriting guidelines submitted by TBI, Navigators' papers are inconsistent on the effect disclosure of fire repair work would have had on acceptance of TBI's application—despite the hard line taken by Navigators' declarations, its motion and statement of undisputed material fact claim only that "[h]ad TBI disclosed the fact that it

---

[3] TBI argued that while the roof could have been repaired, it was old and therefore not up to code, so TBI was hired to perform the framing for the replacement roof.

repaired or remediated fire damage, Navigators would have rejected the Application, amended the Policy terms or increased the premium for the Policy." SSUMF ¶ 29.  That language insinuates that the policy may have allowed for coverage for those performing fire repair work.

Based on the questions created by the evidence and the arguments presented, the court cannot state with certainty at this stage that the misrepresentation concerning fire repair work was material.

**C. Scope of Coverage**

Aside from its rescission arguments, Navigators maintains that the accident was clearly outside the scope of coverage provided by the policy.  It argues that as a result it had no duty to defend TBI in the Butler litigation.

The parties agree that an insurer must provide defense in any suit that potentially seeks damages within the coverage of the policy. E.g. Gray v. Zurich Ins. Co., 65 Cal.2d 263, 275 (1966).  If the court decides there is no duty to defend, it follows that there is no duty to indemnify. Certain Underwriters at Lloyd's of London v. Superior Court, 24 Cal.4th 945, 961 (2001).  Navigators argues that there was no duty to defend both because the property in question was commercial and because of the employer's liability exclusion.

1. Residential Coverage Limitation

As discussed in Section II.B.3. above, TBI's application for coverage stated that it performed only residential work.  Aside from the rescission argument made in that section, Navigators contends that because the work was on a commercial building, it fell outside the policy's coverage limitations.  In support, it points to the policy's declarations page, which includes the following: "Business Description: CARPENTRY – CONSTRUCTION OF RESIDENTIAL PROPERTY NOT EXCEEDING THREE".[4]

---

[4] Navigators explains that the description should have stated "NOT EXCEEDING THREE STORIES."

One of the disputes between the parties on this issue arises from the fact that Navigators did not specifically identify the residential coverage limitation in the complaint. The court requested further briefing on this issue, noting that while parties generally may recover even if they have not identified the correct basis for a claim at the outset, recovery may be prevented if "a late shift in the thrust of the case" would prejudice the defendant. Mir v. Fosburg, 646 F.2d 342, 347 (9th Cir. 1980).

Navigators' supplemental brief focuses on the notice pleading requirements in Fed. R. Civ. P. 8 and the fact that "interpretation of insurance policy is a question of law." Nav. Supp. Br. at 1. Navigators continues by stating that because of this, "[e]xtrinsic evidence is thus irrelevant and inadmissible to interpret the policy." Id. (citing Steadfast Ins. Co. v. Dobbas, 2008 U.S. Dist. LEXIS 8399 at *14-15 (E.D. Cal. 2008)). The citations and argument by Navigators oversimplify the question and ignore parts of the case it cites in support. Of course it is correct that insurance contract interpretation is a matter of law, but Dobbas clearly states that when a policy provision is ambiguous, "[e]xtrinsic evidence can be considered by the court if the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." Dobbas at *16 (internal quotation marks omitted).

After careful review, the court concludes that the policy is ambiguous and could benefit from review of extrinsic evidence. It is true that Fid. & Deposit Co. v. Charter Oak Fire Ins. Co., 66 Cal.App.4th 1080, 1086 (1988) supports Navigators' argument that information on a policy's declarations page can control the court's interpretation of the coverage provided.[5] However, it is not completely clear that the unfinished phrase "Carpentry – Construction of Residential Property Not Exceeding Three" excludes all coverage for commercial property in all situations. Once again, definition of the terms used is crucial, and several interpretations are possible. For

---

[5] The court also notes that in order to determine the scope of coverage, the Charter Oak court both examined the language of the declarations page and reviewed other evidence besides the writing itself, such as the amount of the premiums. 66 Cal. App. 4th at 1086.

example, TBI may have believed that carpentry was permissible on any type of building, but "construction" work was limited to residential property not exceeding three stories. More generally, it is not completely clear that a seemingly generalized eight-word business description is meant to encompass all potential work performed by an insured.[6]  Navigators easily could have clarified the scope of coverage explicitly, but does not point to any additional language that provided more clarity.  Given the ambiguity and the "late shift" toward this language as a basis for exclusion from coverage, Navigators cannot secure summary judgment here.

2. Employer's Liability Exclusion

Navigators maintains that the policy's employer's liability exclusion also prevents coverage here.  The clause excludes coverage for bodily injury to an "employee" or "temporary worker" arising out of employment by any insured or performance of duties related to the conduct of an insured's business.  A "temporary worker" is defined as a "person who is furnished to [the insured] to substitute for a permanent 'employee' on leave or to meet seasonal or short-term work load conditions.  'Temporary worker' includes casual labor." Lindell Decl. Ex. B at MSJ_ 000045.  Navigators concludes that Butler was furnished to TBI to meet it short term needs.

Navigators cannot conclusively demonstrate at this point that Butler was "furnished to" TBI on the day of the accident.  TBI maintains that Butler was working separately for Vanderbuilt when the accident occurred.  Navigators first cites cases that explain that the term "furnished to" includes individuals lent from other employers.  However, that does not eliminate the factual dispute over whether Butler was separately working for Vanderbuilt or was lent to TBI.  Navigators also points out that TBI's assertion that Butler was working for Vanderbuilt

---

[6] For example, while Navigators maintains that this phrase is unambiguous, it would seem to contradict the definition of "Carpentry Residential" in the insurance application.  Though the business description is better read to exclude all work on buildings above three stories, the application's definition appears to exclude only "exterior work on buildings exceeding three stories" (emphasis added).

contradicts Butler's complaint, which states that Butler was working "under the demolition management of Defendants." However, Navigators states no reason that the facts alleged in Butler's complaint should be relied upon by this court. Navigators also cites to Thompson's deposition, in which Thompson states that Butler was asked to remove the roofing paper because he (Thompson) did not want to do roofing work. Likewise, this does not establish that Butler was working for TBI or Thompson. Further, TBI has presented evidence stating that Butler did the roofing work "for Vanderbuilt's benefit and as a Vanderbuilt employee." Bittl Decl. ¶ 6.

**D. TBI's Motion for Summary Judgment**

TBI has moved for summary judgment on Navigators' fourth and fifth causes of action. While its argument is not altogether clear, it appears to contend that that if an insurance company decides to rescind a policy and refuses to defend in the underlying case, it is later precluded from making any arguments concerning exclusions from coverage.

TBI states that Navigators had three options after the Butler case was filed: (1) defend the Butler suit; (2) defend the Butler suit under a "reservation of rights" preserving the right to later contest coverage and the right to rescind; or (3) rescind the policy, but not reserve rights to later assert exclusions. TBI states that Navigators took option (3), precluding it from now making coverage arguments. Aside from the case law, TBI states that allowing insurers to refuse to defend and call the contract "void," but later litigate coverage issues would be "inequitable, illogical, and inconsistent." TBI SJ Mtn. Reply at 7.

While there is case law laying out the three options discussed by TBI, those cases do not establish TBI's proposition. In discussing the option of refusing to furnish a defense, the court in Truck Ins. Exchange v. Superior Court, 51 Cal.App.4th 985, 993-94 (1996 ) merely stated that

> under this option the carrier may place itself in a position of risk: it loses control over defense of the action . . . the insurer may be bound by any issues litigated in the underlying action . . . and the carrier may be sued for breach of contract and breach of the covenant of good faith and fair dealing, resulting in contractual and noncontractual damages being awarded against it.

This language does not imply that refusal to defend in any way prevents an insurer from making exclusion from coverage arguments. The better reading is simply that if the Butler litigation had decided factual issues, Navigators could be disadvantaged because it could later be bound by that holding.

TBI also cites Blue Ridge Ins. Co. v. Jacobsen, 25 Cal.4th 489, 497 (2001), which states that when an insurer defends suit subject to a reservation of rights, it does so without waiving a right to later assert coverage defenses. Similar to Truck Ins. Exchange, this language does not imply that a refusal to defend creates a waiver;[7] rather, it holds that defending without a reservation of rights creates that waiver.

TBI also contends that even if Navigators is permitted to make exclusion arguments, summary judgment is appropriate in TBI's favor on the issue of whether Navigators had a duty to defend. It is true that "[f]acts extrinsic to the complaint . . . give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy," Montrose Chemical Corp. v. Superior Court, 6 Cal.4th 287, 295 (1993), but as with Navigators' motion, summary judgment would be premature at this time.

In sum, TBI's arguments do not provide a basis for which the court can grant summary judgment on Navigators' fourth and fifth causes of action.[8]

### III. CONCLUSION

Though interpretation of insurance contracts is generally a matter of law, introduction of extrinsic evidence is permissible when contractual terms are ambiguous. Furthermore, rescission of an insurance policy based on alleged misrepresentations can create factual issues as to the

---

[7] As Navigators points out, TBI seems to be making a waiver or estoppel claim, but does not provide a straightforward explanation of either of these doctrines. Navigators notes that R&B Auto Center, Inc. v. Farmers Group, Inc., 140 Cal.App.4th 327, 352 (2006), explains that "the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms."

[8] The court also declines to grant summary judgment on the workers' compensation issue.

materiality of the misrepresentations.  Considering the arguments and extrinsic evidence submitted, summary judgment in favor of Navigators is unjustified; therefore its motion is DENIED.   TBI's argument centering on whether Navigators is currently precluded from advancing exclusion of coverage arguments also fails, and its motion is DENIED.

**IT IS SO ORDERED.**

Dated:  April 30, 2012

Jeffrey T. Miller
United States District Judge